**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>   Plaintiff,<br><br>v.<br><br>Marco Antonio Felix-Coronado,<br><br>   Defendant. | No. CR-15-01585-PHX-NVW<br><br>**ORDER** |

Before the Court is Defendant's Motion to Dismiss Indictment (Doc. 21) and the parties' accompanying briefs.  Also before the Court is Defendant's Motion for Revocation of the December 4, 2015 Order of Detention (Doc. 12) and Defendant's Motion for Order Setting Conditions of Release (Doc. 30).  For the reasons that follow, the Motion to Dismiss Indictment will be granted, rendering moot the Motion for Revocation of the Order of Detention and the Motion for Order Setting Conditions of Release.

**I.   BACKGROUND**

Marco Antonio Felix-Coronado, a native of Mexico, entered the United States without inspection in or around 1988.  In 1996 he was convicted of violating Arizona Revised Statute § 28-697(A)(1) ("Arizona's Aggravated DUI statute").[1]  In subsequent

---

[1] The statute has since been renumbered as § 28-1383(A)(1).

deportation proceedings he was found deportable, and he moved for relief in the form of suspension of deportation or voluntary departure.

On May 4, 2001, the presiding immigration judge ("IJ") found Felix-Coronado ineligible for the requested relief after determining that his 1996 conviction under Arizona's Aggravated DUI statute was for a crime involving moral turpitude. (Doc. 21-1 at 45.) In making this determination, the IJ expressly relied on a recent Board of Immigration Appeals ("BIA") decision, *In Re Lopez-Mesa*. That decision, according to the IJ, "considered the Arizona statute and found it specifically to be a crime involving moral turpitude." (*Id.* (citing *In Re Lopez-Mesa*, Int. Dec. 3423 (BIA 1999)).) Accordingly, the IJ concluded: "I have no alternative but to find that [Felix-Coronado] is deportable as charged and has no relief from deportation at this time." (*Id.* at 46.) The BIA summarily affirmed, and Felix-Coronado was removed from the country.

In 2003, the Ninth Circuit rejected the BIA's interpretation of Arizona's Aggravated DUI statute set forth in *In Re Lopez-Mesa*. *Hernandez-Martinez v. Ashcroft*, 329 F.3d 1117 (9th Cir. 2003). The court explained that Arizona's Aggravated DUI statute is divisible: It prohibits not only "driving" under the influence without a license, but also having "actual physical control" of a vehicle under the influence without a license. *Id.* at 1118. Although the court did not opine as to whether a violation of the "driving" prong involves moral turpitude, it indicated that a violation of the "actual physical control" prong does not involve moral turpitude. *Id.* at 1118-19. The court concluded that the BIA's "error of law" in *In Re Lopez-Mesa* "was not to treat the statute as divisible." *Id.* at 1119.

In 2014, Felix-Coronado was found in the United States again. On December 22, 2015, he was indicted for illegal reentry in violation of 8 U.S.C. § 1326(a). He now moves to dismiss the indictment, claiming the underlying 2001 removal order violated his due process rights because the IJ erroneously told him he was ineligible for relief from removal.

- 2 -

## II. ANALYSIS

Because the underlying removal order is a predicate element of an illegal reentry offense under 8 U.S.C. § 1326(a), Felix-Coronado may collaterally attack the removal order under the due process clause. *United States v. Pallares-Galan*, 359 F.3d 1088, 1095 (9th Cir. 2004). To sustain a collateral attack, Felix-Coronado must show that (1) he "exhausted any administrative remedies" against the order, (2) the deportation proceedings at which the order was issued "deprived him of the opportunity for judicial review," and (3) the order was "fundamentally unfair." 8 U.S.C. § 1326(d).

Here, the government contends only that Felix-Coronado has not shown fundamental unfairness. To show fundamental unfairness, Felix-Coronado must demonstrate that (1) his due process rights were violated by defects in the underlying deportation proceeding and (2) he suffered prejudice as a result. *Pallares-Galan*, 359 F.3d at 1095.

### A. Due Process Violation

An alien in removal proceedings has a due process right to be informed of his or her ability to apply for relief from removal. *United States v. Vidal-Mendoza*, 705 F.3d 1012, 1015 (9th Cir. 2013). The Ninth Circuit has derived this right from an immigration regulation that requires IJs to inform aliens of their "apparent eligibility" to apply for certain relief. *Id.* (quoting 8 C.F.R. § 1240.11(a)(2)). This right is violated when the IJ either fails to give the alien any information about the relief for which the alien is "apparently eligible" or when the IJ erroneously tells the alien that no relief is possible. *United States v. Gonzales-Flores*, 804 F.3d 920, 926-97 (9th Cir. 2015).

Felix-Coronado alleges a violation of the latter sort, claiming the IJ erroneously told him he was ineligible for relief from removal. This kind of error can serve as a basis for challenging a removal order if the error resulted from the IJ's misapplication of existing precedent. *Vidal-Mendoza*, 705 F.3d at 1017. Misapplication of existing

precedent is actionable because IJs have a duty to inform aliens about their apparent eligibility for relief under the applicable law at the time. *Id.* By contrast, an IJ's failure to anticipate future changes in law when determining eligibility for relief is not actionable. *Id.* After all, IJs are not expected to be clairvoyant when discharging their duty to inform. *Id.*

Felix-Coronado contends the IJ's conclusion—that he was ineligible for relief because he had been convicted of a crime involving moral turpitude—was false in light of then-existing precedent. Specifically, he claims the IJ failed to treat Arizona's Aggravated DUI statute as divisible, thereby failing to apply *Taylor v. United States*, 495 U.S. 575 (1990) and its progeny.

The government contends the IJ's conclusion about Felix-Coronado's eligibility for relief was correct in light of then-existing precedent, because the IJ followed the BIA's decision in *In Re Lopez-Mesa*, 22 I. & N. Dec. 1188 (BIA 1999). The government views Felix-Coronado as attempting to take advantage of a subsequent change in law that occurred when the Ninth Circuit rejected *In Re Lopez-Mesa* years later. *See Hernandez-Martinez v. Ashcroft*, 329 F.3d 1117 (9th Cir. 2003).

Whether the IJ correctly applied precedent as it existed fifteen years ago, in the ever-changing field of immigration law, is a somewhat conjectural inquiry. Nevertheless, it appears that the IJ did misapply precedent in a way that made his conclusion about Felix-Coronado's eligibility for relief erroneous.

### 1. Which Precedent the IJ Misapplied

First, some clarification is in order. Contrary to Felix-Coronado's theory, the IJ cannot be faulted for failing to apply *Taylor* and its progeny, as such, in determining whether Felix-Coronado's conviction constituted a crime involving moral turpitude. Indeed, it would have been strange for the IJ to cite *Taylor*. On its face, *Taylor* was a decision about whether a crime was a "burglary" for federal sentencing purposes. *See* 495 U.S. at 577-78. Over time, the Ninth Circuit applied *Taylor*'s methodology—later

- 4 -

known as the "categorical" and "modified categorical" approaches—in other contexts. *See, e.g.*, *United States v. Anderson*, 989 F.2d 310, 312 (9th Cir. 1993) (applying *Taylor* to determine whether a crime was "extortion"); *Sareang Ye v. I.N.S.*, 214 F.3d 1128, 1130 (9th Cir. 2000) (applying *Taylor* to determine whether a crime was "aggravated felony" for immigration purposes). But the Ninth Circuit did not begin to invoke *Taylor* in determining whether crimes involved "moral turpitude" until after the IJ's 2001 removal order. *See, e.g.*, *Cuevas-Gaspar v. Gonzales*, 430 F.3d 1013, 1017 (9th Cir. 2005).

Nor can the IJ be faulted for failing to apply the correct general methodology to Felix-Coronado's case. Before 2001 the Ninth Circuit used an approach substantively similar to *Taylor*'s "categorical" approach in determining whether a conviction involved "moral turpitude" for immigration purposes. *See Goldeshtein v. I.N.S.*, 8 F.3d 645, 647 (9th Cir. 1993) ("For a crime to involve moral turpitude within the meaning of the INA, the crime must *necessarily* involve moral turpitude." (citations omitted)). The BIA also used a similar approach. *See Matter of Short*, 20 I. & N. Dec. 136, 137-38 (BIA 1989) ("If [the statute under which the conviction occurred] defines a crime in which turpitude necessarily inheres, then the conviction is for a crime involving moral turpitude . . . ."). The IJ indirectly applied this sort of categorical approach to Felix-Coronado's case by relying on *In Re Lopez-Mesa*, where the BIA purported to use this approach in interpreting Arizona's Aggravated DUI statute. 22 I. & N. Dec. at 1193-94 (citing *Goldeshtein* and *Matter of Short*).

However, although the IJ applied the correct general methodology in evaluating Felix-Coronado's conviction, he missed a crucial step: He did not determine whether Arizona's Aggravated DUI statute was divisible into multiple offenses, and if so, which offense Felix-Coronado committed. Under then-existing precedent, this divisibility analysis was necessary to determine whether a conviction under a particular statute was, for immigration purposes, a crime involving moral turpitude. *In Re Sweetser*, 22 I. & N. Dec. 709, 713-14 (BIA 1999) (citing BIA opinions); *see also Wadman v. INS*, 329 F.2d

812, 814 (9th Cir. 1964). By failing to conduct this divisibility analysis, the IJ misapplied existing precedent.

The government contends that, far from misapplying precedent, the IJ correctly applied the precedent most on point: *In Re Lopez-Mesa*. After all, the question before the IJ was whether Felix-Coronado's conviction under Arizona's Aggravated DUI statute was for a crime involving moral turpitude, and *In Re Lopez-Mesa* decided that convictions under that statute were "for a crime involving moral turpitude." 22 I. & N. Dec. at 1196.

The ultimate force of the government's argument depends on what the BIA's precise holding in *In Re Lopez-Mesa* was. The BIA apparently did not abolish the long-standing requirement of divisibility analysis, as the opinion did not mention divisibility. Thus, the BIA's holding can be construed in one of two ways:

> Interpretation 1: Arizona's Aggravated DUI statute is not divisible, and all convictions under the statute are for crimes involving moral turpitude.

On this view, *In Re Lopez-Mesa* would have directly governed Felix-Coronado's case. The IJ would not have needed to conduct a divisibility analysis because *In Re Lopez-Mesa* would have already decided the question.

> Interpretation 2: Convictions for "driving" in violation of Arizona's Aggravated DUI statute are for crimes involving moral turpitude.

On this view, *In Re Lopez-Mesa* would have governed Felix-Coronado's case only if he had been convicted for "driving" in violation of the statute. The IJ would have needed to conduct a divisibility analysis to determine whether Felix-Coronado was convicted under the statute's "driving" prong, before deciding whether *In Re Lopez-Mesa* applied.

Interpretation 2 is the more natural reading of the BIA's holding. The BIA's opinion does not mention divisibility and therefore should not be construed as deciding

- 6 -

whether Arizona's Aggravated DUI statute was divisible. And by its own terms, the opinion—at least in critical parts—seems limited to the "driving" prong of the statute. *See, e.g.*, 22 I. & N. Dec. at 1195 ("A conviction for aggravated DUI under section 28-697(A)(1) . . . requires a showing that the offender was 'knowingly' *driving* . . . ." (emphasis added)), 1196 ("We find that a person who *drives* while under the influence, knowing that he or she is absolutely prohibited from *driving*, commits a crime . . . [involving] moral turpitude." (emphases added)).

Interpretation 2 also squares with the Ninth Circuit's view of the decision as expressed in *Hernandez-Martinez v. Ashcroft*, 329 F.3d 1117 (9th Cir. 2003). There, the court concluded that the BIA's "error of law" in *In Re Lopez-Mesa* was "not to treat the statute as divisible." *Id.* at 1117-19. The government construes this language as "imposing" a requirement that Arizona's Aggravated DUI statute be treated as divisible and "overturning" the BIA's contrary determination. (*See* Doc. 26 at 17.) This description goes too far. The court did not "impose" a new requirement, but simply conducted the divisibility analysis that, as the court pointed out, was already required under Ninth Circuit and BIA precedent. 329 F.3d at 1118. And the court did not "overturn" a BIA determination that the statute was *not* divisible, so much as reject a BIA interpretation that *failed to address* divisibility. *Accord Marmolejo-Campos v. Holder*, 558 F.3d 903, 906 (9th Cir. 2009) (describing *In Re Lopez-Mesa* as "failing to assess" Arizona's Aggravated DUI statute as divisible).

In other words, *In Re Lopez-Mesa* put the cart before the horse. It decided that a conviction under Arizona's Aggravated DUI statute was for a crime involving moral turpitude without deciding the analytically prior questions of whether the statute was divisible and, if so, which prong gave rise to the conviction. Thus, by applying *In Re Lopez-Mesa* without conducting a divisibility analysis, the IJ made a similar mistake. He relied on a decision relating to step two of a methodology in which he skipped step one.

The case is analogous to *United States v. Pallares-Galan*, 359 F.3d 1088 (9th Cir. 2004). There, an alien challenged a removal order in which the IJ said he was ineligible for relief because his prior conviction under a statute was for an aggravated felony. *Id.* at 1092-93. The IJ expressly relied on a BIA decision stating that a conviction under the statute was an aggravated felony.[2] *Id.* at 1093. In reviewing the IJ's conclusion, the Ninth Circuit used the *Taylor* methodology. *Id.* at 1099. First, the court held that the statute was divisible in that it extended to conduct constituting an aggravated felony as well as conduct falling short of that label. *See id.* at 1100-02. Next, the court held that the pertinent documents in the conviction record did not specify which of these two categories of conduct the alien had committed. *Id.* at 1103. Accordingly, the court concluded that the IJ "improperly characterized" the alien's conviction as an aggravated felony and "erroneously informed him that he was ineligible" for relief. *Id.*

Two lessons can be drawn from *Pallares-Galan*. First, an IJ's reliance on general language in a facially applicable BIA decision does not prove he correctly applied precedent. *See United States v. Vidal-Mendoza*, 705 F.3d 1012, 1017 (9th Cir. 2013) (characterizing *Pallares-Galan* as instance of "IJ's misapplication of existing precedent"). Second, an IJ's misapplication of precedent does not, by itself, violate due process. The misapplication must result in an erroneous conclusion about the alien's apparent eligibility for relief. *See id.* (characterizing *Pallares-Galan* as case where "IJ's misapplication of existing precedent resulted in his failure to inform the defendant of his 'apparent eligibility' for relief"). Thus, the Court turns to consider whether the IJ's conclusion about Felix-Coronado's eligibility for relief was erroneous.

---

[2] Admittedly, that BIA decision was "not a precedent decision" according to the IJ. *Id.* at 1093.

### 2. Whether the IJ Erroneously Concluded Felix-Coronado Was Ineligible for Relief

Had the IJ correctly applied existing precedent, he would have first determined whether Arizona's Aggravated DUI statute is divisible into multiple offenses. On this matter the Court has the benefit of hindsight. As the Ninth Circuit explained in *Hernandez-Martinez*, the statute is divisible into the offenses of "driving" under the influence without a license and having "actual physical control" of a vehicle under the influence without a license. 329 F.3d at 1118. Thus, as the Ninth Circuit noted, the statute's range extends beyond crimes involving moral turpitude. *Id.*

The next step is to determine, as the court did in *Pallares-Galan*, whether the pertinent documents in Felix-Coronado's conviction record specify which of these offenses he had committed. Only a narrow set of documents may be considered in this determination. *In Re Sweetser*, 22 I. & N. Dec. 709, 714 (BIA 1999) ("This approach does not involve an inquiry into facts previously presented and tried. Instead the focus is on the elements required to sustain the conviction."); *see also Matter of Short*, 20 I. & N. Dec. 136, 137-38 (BIA 1989) (defining "record of conviction" as the indictment, plea, verdict, and sentence).

Based on the documents submitted by the parties, Felix-Coronado's conviction record does not specify whether he was convicted under the "driving" prong or the "actual physical control" prong. The only document with possibly relevant information is the Presentence Report, whose description of a "two-car accident" indicates Felix-Coronado was in fact "driving" at the time of the offense. (Doc. 26-2 at 13.) But this description cannot be considered in determining which prong Felix-Coronado was *convicted* under, because there is no indication this description played a role in the decision to convict. *See Matter of Teixeira*, 21 I. & N. Dec. 316, 319 (BIA 1996) (barring consideration of police report because, although it may indicate what the defendant did "in actual fact," it does not indicate what the defendant "was convicted of"); *accord Pallares-Galan*, 359 F.3d at 1103 n.9 (noting it is "well established" that

courts "may not consider the factual description in a presentence report in determining whether a defendant pled guilty to the elements of an aggravated felony").

Because Felix-Coronado's conviction record does not specify the statutory prong under which he was convicted, the government "has failed to meet its burden" on this matter. *Pallares-Galan*, 359 F.3d at 1103.[3] Thus, the IJ "improperly characterized" Felix-Coronado's conviction as a crime involving moral turpitude and, as a result, "erroneously informed him that he was ineligible to receive discretionary relief." *Id.* This error violated Felix-Coronado's right to due process.

**B.     Prejudice**

In addition to showing a due process violation, Felix-Coronado must establish that he suffered prejudice as a result. *United States v. Rojas-Pedroza*, 716 F.3d 1253, 1263 (9th Cir. 2013). To do this, he must make a "plausible" showing that, absent the due process violation, the IJ would have granted the discretionary relief he requested. *See id.* Determining whether Felix-Coronado has made this showing is a two-step process. First, the Court must identify factors relevant to the IJ's exercise of discretion as to the relief being sought. *Id.* Second, the Court must determine whether, in light of these factors and the unique circumstances of Felix-Coronado's case, it is plausible that the IJ would have exercised discretion in his favor. *Id.*

Felix-Coronado requested discretionary relief in the form of suspension of deportation or voluntary departure. In exercising discretion as to the request for voluntary departure, the IJ would have considered favorable and unfavorable factors. *Id.* at 1264. Favorable factors might include the length of residence in the United States, any

---

[3] The government argues Felix-Coronado had the burden of *disproving* to the IJ that his conviction involved moral turpitude. Whatever the merit of this argument in other procedural contexts, *Pallares-Galan* foreclosed this argument here by stating, in a case where a defendant charged with illegal reentry was collaterally attacking an underlying removal order, that the burden of proving "the specific conduct of which the defendant was convicted" prior to the removal order "rests squarely with the government." *Id.* at 1099.

- 10 -

family ties to the United States, and any humanitarian needs. *Id.* at 1265. Unfavorable factors might include the nature and circumstances of the underlying deportation ground at issue, any additional violations of immigration laws, the seriousness and recency of any criminal record, and any other evidence of bad character. *Id.*

In Felix-Coronado's case, positive factors were strong. Felix-Coronado had lived in the United States for thirteen years, had several family members lawfully present in the United States, and had maintained continuous employment in the United States. The government does not dispute the existence of these factors, but instead points to negative factors: Felix-Coronado was not married, had multiple DUI convictions, and had consumed alcohol on a regular basis. Despite these negative factors, and in light of the strong positive factors and the unique circumstances of Felix-Coronado's case, it is plausible that the IJ would have granted relief in the form of voluntary departure.

Therefore Felix-Coronado suffered prejudice as a result of the due process violation. The Court need not decide whether the IJ might have granted suspension of deportation, the other form of relief Felix-Coronado sought.

### III.   CONCLUSION

In the 2001 removal order, the IJ misapplied existing precedent and erroneously told Felix-Coronado he was ineligible for relief from removal. This error violated due process and caused Felix-Coronado to suffer prejudice. As a result, the removal proceedings were fundamentally unfair and cannot now be used as a predicate element in Felix-Coronado's indictment for illegal reentry under 8 U.S.C. § 1326(a). Therefore the indictment will be dismissed.

In the absence of an indictment, Felix-Coronado will be released from custody without prejudice to a possible immigration detainer. Thus, his motion to revoke the December 4, 2015 detention order and his motion for an order setting conditions of his release will be denied as moot.

IT IS THEREFORE ORDERED that Defendant's Motion to Dismiss Indictment (Doc. 21) is granted.

IT IS FURTHER ORDERED that Defendant be released from custody without prejudice to an immigration detainer if the government seeks it.

IT IS FURTHER ORDERED that Defendant's Motion for Revocation of the December 4, 2015 Order of Detention (Doc. 12) and Defendant's Motion for Order Setting Conditions of Release (Doc. 30) are denied as moot.

DATED this 16th day of February, 2016.

_____
Neil V. Wake
United States District Judge